**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TYRONE D. DAVIDSON,

    Plaintiff,                                            Case No.:

v.                                                                        Hon.

DETROIT ENTERTAINMENT, L.L.C.,
d/b/a MOTORCITY CASINO HOTEL,

    Defendant.

---

Carla D. Aikens (P69530)
Thameka I. Hall (P79693)
CARLA D. AIKENS, P.L.C.
Attorneys for Plaintiff
615 Griswold St., Ste. 709
Detroit, MI 48226
(844) 835-2993
Fax: (877) 454-1680
carla@aikenslawfirm.com
thameka@aikenslawfirm.com

---

**COMPLAINT AND JURY DEMAND**

    Plaintiff Tyrone D. Davidson, by and through his counsel, Carla D. Aikens, P.L.C.,
brings this Complaint against Defendant Detroit Entertainment, L.L.C., doing business as
MotorCity Casino Hotel, and states as follows:

**PARTIES**

1.    Plaintiff Tyrone D. Davidson is an individual residing in Wayne County, Michigan.

2.    Defendant Detroit Entertainment, L.L.C., doing business as MotorCity Casino Hotel
    ("MotorCity"), operates the casino and hotel located at 2901 Grand River Avenue in
    Detroit, Michigan, and employed Plaintiff.

3.    At all relevant times, Defendant employed 501 or more employees and was an employer
    covered by the Americans with Disabilities Act of 1990, as amended ("ADA").

1

## JURISDICTION AND VENUE

4.   This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under Title I of the ADA, 42 U.S.C. §§ 12112, 12117, and 12203.

5.   This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's related claims under Michigan's Persons with Disabilities Civil Rights Act and the Bullard-Plawecki Employee Right to Know Act because those claims form part of the same case or controversy.

6.   Venue is proper in the Eastern District of Michigan under 42 U.S.C. § 2000e-5(f)(3), as incorporated by 42 U.S.C. § 12117(a), and 28 U.S.C. § 1391 because Defendant operates in this District and the unlawful employment practices occurred in Detroit, Michigan.

## ADMINISTRATIVE EXHAUSTION

7.   On November 6, 2023, Plaintiff filed Charge No. 471-2023-05974 with the United States Equal Employment Opportunity Commission ("EEOC") and the Michigan Department of Civil Rights. The Charge named Motor City Casino-Hotel as Plaintiff's employer.

8.   The Charge described Plaintiff's disability, his request for medical leave as a reasonable accommodation, Defendant's errors in processing the leave, the medical documentation submitted on his behalf, and Defendant's decision to discharge him for allegedly taking unauthorized medical leave.

9.   The disability discrimination, failure to accommodate, retaliation, and interference claims asserted here are within the scope of the Charge and the investigation that reasonably and actually followed from those allegations.

10.   On March 9, 2026, the EEOC issued a determination finding reasonable cause to believe Defendant violated the ADA.

11.   On April 20, 2026, the EEOC issued Plaintiff a Notice of Right to Sue. This action is timely filed within ninety days of Plaintiff's receipt of the Notice.

**FACTUAL ALLEGATIONS**

12.     Defendant hired Plaintiff on September 19, 2022, as a MotorCity Security Officer.

13.     Plaintiff's duties included monitoring the facility, assisting patrons, reporting policy violations, and addressing safety and security concerns.

14.     Plaintiff earned approximately $14.40 per hour at the time of his discharge.

15.     Plaintiff has a serious cardiovascular impairment involving coronary artery disease and related cardiac conditions. During the acute illness and recovery period, the impairment substantially limited major life activities and major bodily functions, including working and cardiovascular and circulatory function.

16.     Before the acute illness, Plaintiff performed his Security Officer duties. With a finite period of medical leave, he remained qualified to perform the essential functions of his position upon recovery.

17.     On December 8 and 9, 2022, Plaintiff experienced chest pain and called in sick.

18.     On December 16, 2022, Plaintiff became severely ill while working at MotorCity. Defendant sent him by ambulance to Henry Ford Health.

19.     Defendant's supervisors and Human Resources Department were aware that Plaintiff was experiencing a serious medical condition and needed leave.

20.     In December 2022, Plaintiff informed Defendant of his medical condition and requested medical leave as a reasonable accommodation.

21.     Defendant initially denied or prevented approval of the requested leave because Defendant's records incorrectly reflected that Plaintiff had insufficient service or leave hours.

22.     On or about December 21, 2022, Plaintiff notified Defendant's Benefits Manager that Defendant's third-party leave administrator had incorrect information concerning his length of service.

3

23. After the employment records were corrected, Plaintiff applied for and obtained approval for medical leave for an initial period.

24. On January 20, 2023, Plaintiff entered DMC Heart Hospital for further medical evaluation.

25. On January 23, 2023, Plaintiff underwent coronary artery bypass graft surgery and remained hospitalized until February 2, 2023.

26. On February 6, 2023, Defendant gave Plaintiff seven days to ensure that supporting medical documentation was submitted to its leave administrator, warning that uncovered absences would be assessed under Defendant's attendance policy.

27. Plaintiff promptly arranged for his physician to complete the requested certification. The requested accommodation was a finite period of leave, not an indefinite absence.

28. On February 13, 2023, Plaintiff's physician completed the leave administrator's Certification of Health Care Provider for Employee's Serious Health Condition.

29. The February 13 certification identified a continuous period of incapacity beginning December 7, 2022, and ending May 10, 2023.

30. A transmission log confirms that an eleven-page certification package was successfully faxed to the leave administrator at 2:11 p.m. on February 13, 2023, with an "OK" transmission status.

31. Defendant designated and relied on the third-party leave administrator to receive and process medical leave documentation on Defendant's behalf.

32. Defendant later admitted in its EEOC position statement that Plaintiff provided medical documentation to the third-party administrator on February 13, 2023.

33. Despite receiving that documentation, Defendant and its leave administrator treated the certification as though it supported leave only through February 1, 2023, and failed to process the physician's stated end date of May 10, 2023.

34. Defendant did not contact Plaintiff's physician to clarify the certification, request additional information concerning the May 10 end date, or otherwise engage in a good-faith interactive process before ending Plaintiff's employment.

35. On February 27, 2023, Defendant terminated Plaintiff. The termination letter stated that Plaintiff had been on an unapproved medical leave since February 2 and had not provided medical documentation to the leave administrator.

36. The stated reason was false. Plaintiff's physician had faxed the requested certification fourteen days earlier, and the transmission was successfully completed.

37. At 2:26 p.m. on February 27, Plaintiff emailed Defendant's Benefits Manager and Human Resources Director and reported that his physician and the leave administrator had confirmed that his medical documents were forwarded and approved on February 13.

38. At 2:47 p.m. that same day, Plaintiff again emailed Defendant and expressly identified the certified continuous-leave period as December 7, 2022 through May 10, 2023.

39. Defendant responded that the last notification it had received from the leave administrator approved leave only through February 1, 2023, but Defendant did not investigate or correct the discrepancy, rescind the termination, or reinstate Plaintiff.

40. Defendant also failed to remove attendance-related discipline imposed during Plaintiff's disability-related absences in December 2022.

41. The requested finite leave did not impose an undue hardship and did not create a direct threat. Defendant has never identified facts establishing otherwise.

42. Defendant's mishandling of Plaintiff's medical documentation, refusal to correct the known discrepancy, attendance discipline, and termination deprived Plaintiff of the reasonable accommodation he requested and interfered with his exercise of rights protected by the ADA.

5

**THE EEOC'S REASONABLE-CAUSE FINDINGS**

43. After investigating the Charge, the EEOC found that Plaintiff requested medical leave as a reasonable accommodation based on a disability.

44. The EEOC found that Plaintiff submitted medical documentation on February 13, 2023, extending his medical leave through May 10, 2023, and that Defendant's agent received the documentation.

45. The EEOC found that Plaintiff complied with Defendant's requirements for disability-related leave approval and that Defendant discharged him for allegedly taking unauthorized medical leave.

46. The EEOC further found that Defendant did not establish that the requested accommodation would have imposed an undue hardship or created a direct threat.

47. The EEOC also found reasonable cause to believe Defendant subjected Plaintiff to attendance-related discipline from approximately December 8 through December 18, 2022, and failed to remove the discipline from his personnel file.

**POST-CHARGE CONDUCT AND PERSONNEL RECORD**

48. Plaintiff filed his EEOC and Michigan Department of Civil Rights Charge on November 6, 2023.

49. On November 27, 2023, while the Charge was pending, Plaintiff sent Defendant a written request under the Bullard-Plawecki Employee Right to Know Act for his personnel record, including records relating to his termination.

50. Plaintiff's request described the personnel record he sought and was directed to Defendant's Human Resources Department.

51. The certified-mail receipt reflects that Defendant received the request on November 29, 2023.

52. Upon information and belief, Defendant knew by that time that Plaintiff had filed and was pursuing a disability discrimination charge concerning his termination.

53. Defendant did not respond, offer Plaintiff an opportunity to review his personnel record, or provide the requested record.

54. Defendant's refusal deprived Plaintiff of access to records bearing directly on the stated reason for his termination and his pending discrimination charge.

55. Upon information and belief, Defendant refused to provide access to the personnel record because Plaintiff opposed disability discrimination, requested an accommodation, filed the Charge, and continued to pursue his statutory rights.

## COUNT I

## DISABILITY DISCRIMINATION AND DISCRIMINATORY DISCHARGE

## AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12112

56. Plaintiff incorporates the preceding paragraphs as though fully restated.

57. Plaintiff had an actual disability and a record of disability, and Defendant also regarded Plaintiff as having a physical impairment.

58. Plaintiff was qualified for his Security Officer position and could perform its essential functions with the reasonable accommodation of finite medical leave through May 10, 2023.

59. Defendant subjected Plaintiff to attendance discipline and terminated his employment because of his disability, record of disability, disability-related absences, and need for medical leave.

60. Defendant's stated reason for termination was false and pretextual because the requested medical documentation had been submitted and received before the termination.

61. Defendant intentionally discriminated against Plaintiff in violation of 42 U.S.C. § 12112.

62. Plaintiff suffered economic loss, emotional distress, and other damages as a direct and proximate result.

## COUNT II

## FAILURE TO ACCOMMODATE

## AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12112(b)(5)(A)

63. Plaintiff incorporates the preceding paragraphs as though fully restated.

64. Plaintiff notified Defendant of his disability and requested medical leave as a reasonable accommodation.

65. The requested leave was reasonable and finite. The physician's certification identified May 10, 2023, as the end of the continuous incapacity period.

66. Plaintiff timely supplied the documentation Defendant required, and Defendant's designated leave administrator received it.

67. Defendant failed to properly process or honor the certification, failed to seek clarification, failed to engage in a good-faith interactive process, and terminated Plaintiff instead of providing the accommodation.

68. The requested accommodation did not impose an undue hardship and did not create a direct threat.

69. Defendant failed to reasonably accommodate Plaintiff in violation of 42 U.S.C. § 12112(b)(5)(A).

70. Plaintiff suffered economic loss, emotional distress, and other damages as a direct and proximate result.

## COUNT III

## RETALIATION

## AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12203(a)

71. Plaintiff incorporates the preceding paragraphs as though fully restated.

72. Plaintiff engaged in protected activity by requesting and pursuing a reasonable accommodation, correcting Defendant's leave-record errors, submitting medical documentation, opposing the resulting disability discrimination, filing an EEOC and Michigan Department of Civil Rights Charge, and pursuing access to records relevant to that Charge.

73. Defendant knew of Plaintiff's protected activity.

74. Defendant terminated Plaintiff fourteen days after his physician submitted the requested certification and while Plaintiff was pursuing the requested accommodation.

75. After Plaintiff filed the Charge, Defendant also refused to provide access to the personnel record bearing on the challenged termination.

76. The termination and post-Charge refusal of access were materially adverse and would dissuade a reasonable employee from requesting an accommodation, opposing disability discrimination, or filing and pursuing a charge.

77. The close timing, Defendant's false termination reason, Defendant's refusal to correct the error after receiving immediate notice, and Defendant's later withholding of the personnel record support a causal connection between Plaintiff's protected activity and Defendant's actions.

78. But for Plaintiff's protected activity, Defendant would not have terminated him or refused access to the personnel record.

79. Defendant retaliated against Plaintiff in violation of 42 U.S.C. § 12203(a).

80. Plaintiff suffered economic loss, emotional distress, and other damages as a direct and proximate result.

## COUNT IV

## INTERFERENCE WITH ADA RIGHTS

## AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12203(b)

81. Plaintiff incorporates the preceding paragraphs as though fully restated.

82. Plaintiff exercised and attempted to exercise rights protected by the ADA by requesting finite medical leave, submitting the required certification, seeking correction of Defendant's leave-processing error, and opposing termination for use of disability-related leave.

83. Defendant knew that Plaintiff was exercising and attempting to exercise those rights.

84. Defendant interfered with Plaintiff's exercise and enjoyment of ADA rights by failing to accurately process the certification, disregarding the certified May 10 end date, refusing to clarify or correct the known discrepancy, applying attendance consequences, and terminating Plaintiff for the very leave he sought as an accommodation.

85. Defendant's conduct directly hindered and prevented Plaintiff from obtaining and using the reasonable accommodation to which he was entitled.

86. Defendant violated 42 U.S.C. § 12203(b).

87. Plaintiff suffered economic loss, emotional distress, and other damages as a direct and proximate result.

## COUNT V

## RETALIATION

## MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, MCL 37.1602(a)

88. Plaintiff incorporates the preceding paragraphs as though fully restated.

89. Plaintiff engaged in activity protected by the Michigan Persons with Disabilities Civil Rights Act by opposing disability discrimination, requesting an accommodation, filing a

charge with the Michigan Department of Civil Rights and EEOC, and pursuing records relevant to that charge.

90. Defendant knew of Plaintiff's protected activity.

91. After Plaintiff filed the Charge, Defendant refused to provide access to his personnel record and termination records, despite receiving his written statutory request.

92. The refusal was adverse because it obstructed Plaintiff's access to evidence concerning the challenged termination and could deter a reasonable person from pursuing a disability discrimination complaint.

93. Upon information and belief, Plaintiff's protected activity was a significant factor in Defendant's refusal to provide access to the personnel record.

94. Defendant retaliated against Plaintiff in violation of MCL 37.1602(a).

95. Plaintiff suffered damages and is entitled to legal and equitable relief under Michigan law.

## COUNT VI

## VIOLATION OF THE BULLARD-PLAWECKI EMPLOYEE RIGHT TO KNOW ACT

## MCL 423.501 et seq.

96. Plaintiff incorporates the preceding paragraphs as though fully restated.

97. Plaintiff is a former employee, Defendant is an employer, and the requested records constitute a personnel record within the meaning of the Bullard-Plawecki Employee Right to Know Act.

98. On November 27, 2023, Plaintiff made a written request describing the personnel record he sought, including records concerning his termination.

99. Defendant received the request on November 29, 2023.

11

100.    Defendant failed to provide Plaintiff a reasonable opportunity to review the personnel record, failed to respond to the request, and failed to permit Plaintiff to obtain a copy after review.

101.    Defendant's failure to comply was willful and knowing because it received a clear written statutory request and ignored it.

102.    Defendant violated the Bullard-Plawecki Employee Right to Know Act.

103.    Plaintiff is entitled to an order compelling compliance, actual damages and costs, and, for a willful and knowing violation, statutory damages of $200.00, reasonable attorney fees, costs, and actual damages.

## DAMAGES

104.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, lost employment benefits, other economic loss, emotional distress, anxiety, humiliation, and other compensable harm.

105.    Plaintiff has undertaken reasonable efforts to mitigate his economic damages and seeks all relief available under federal and Michigan law.

## JURY DEMAND

106.    Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tyrone D. Davidson respectfully requests that the Court enter judgment in his favor and against Defendant and award:

A. Back pay, front pay, lost employment benefits, and reinstatement or front pay in lieu of reinstatement;

B. Compensatory damages, including damages for emotional distress;

C. Punitive damages to the extent permitted by the ADA;

D. Declaratory relief that Defendant violated Plaintiff's rights;

12

E. Appropriate injunctive and equitable relief, including correction or expungement of disability-related attendance and termination records;

F. An order compelling Defendant to provide Plaintiff access to review his personnel record and to permit him to obtain copies as provided by law;

G. Actual and statutory damages, attorney fees, and costs under the Bullard-Plawecki Employee Right to Know Act;

H. Prejudgment and postjudgment interest;

I. Reasonable attorney fees and costs under the ADA, the Michigan Persons with Disabilities Civil Rights Act, and all other applicable law; and

J. Any other legal or equitable relief the Court deems just and proper.


Dated: July 15, 2026                                    Respectfully submitted,
                                                        **CARLA D. AIKENS, P.L.C.**

                                                        By: */s/ Carla D. Aikens*
                                                        Carla D. Aikens (P69530)
                                                        Attorney for Plaintiff
                                                        615 Griswold St., Suite 709
                                                        Detroit, MI 48226
                                                        Tel: (844) 835-2993
                                                        Fax: (877) 454-1680
                                                        carla@aikenslawfirm.com